**Case No. 25-2576**

# In The United States Court of Appeals for the Third Circuit

NAACP DELAWARE, LAMOTTE JOHNS, TRANECKA CHARLES, NICKEA ROWE, SEMAJ GWYN, NATASHA GREEN, & ANTHONY GREEN,

*Appellants/Plaintiffs Below*,

v.

CITY OF WILMINGTON, WILFREDO CAMPOS in his official capacity as CHIEF OF POLICE of the WILMINGTON POLICE DEPARTMENT, & JOHN CARNEY in his official capacity as MAYOR OF WILMINGTON,

*Appellees/Defendants Below*.

**On Appeal from the United States District Court for the District of Delaware, C.A. No. 23-1205-GBW, Hon. Gregory B. Williams, *United States District Judge***

**BRIEF OF APPELLEES**

John D. Hendershot (#4178)
Kelly E. Farnan (#4395)
Christine D. Haynes (#4697)
Sara M. Metzler (#6509)
Richards, Layton & Finger, P.A.
920 N. King Street
Wilmington, DE 19801
(302) 651-7700
hendershot@rlf.com
farnan@rlf.com
haynes@rlf.com
metzler@rlf.com

Rosamaria Tassone-DiNardo (#3546)
City of Wilmington Law Department
Louis L. Redding City/County Building
800 N. French Street, 9th Floor
Wilmington, DE 19801
(302) 576-2175

*Attorneys for Appellees/Defendants*
*Below City of Wilmington, Wilfredo*
*Campos, Michael Purzycki*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, undersigned counsel states as follows: the disclosure requirements of Federal Rule of Appellate Procedure 26.1 and Local Rule 26.1.1 are not applicable.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... ii

STATEMENT OF RELATED CASES AND PROCEEDINGS ..............................1

INTRODUCTION ................................................................................................2

STATEMENT OF THE CASE..............................................................................6

SUMMARY OF ARGUMENT ...........................................................................10

ARGUMENT .......................................................................................................11

     I.     STANDARD OF REVIEW ................................................................13

     II.    THE DISTRICT COURT CORRECTLY DETERMINED THAT THE SIX INDIVIDUAL PLAINTIFFS LACK ARTICLE III STANDING TO SEEK INJUNCTIVE RELIEF.........14

     III.   THE DISTRICT COURT CORRECTLY HELD THAT THE NAACP-DE DOES NOT HAVE ARTICLE III STANDING TO SEEK INJUNCTIVE OR DECLARATORY RELIEF. ...............26

         A.    The NAACP-DE Does Not have Organizational Standing. ..........................................................................26

         B.    The NAACP Does Not Have Associational Standing.............33

CONCLUSION ....................................................................................................39

COMBINED CERTIFICATIONS.......................................................................40

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Advocates for Highway & Auto Safety v. Federal Motor Carrier Safety Administration*,
41 F.4th 586 (D.C. Cir. 2022)...............................................................................36

*Alabama Legislative Black Caucus v. Alabama*,
575 U.S. 254 (2015)...................................................................................36, 37

*Ballard Concrete v. CDE Glob., ID*,
2025 WL 3083282 (Del. Super. Ct. Nov. 3, 2025)..............................................30

*Barnes v. Am. Tobacco Co.*,
161 F.3d 127 (3d Cir. 1998) ................................................................................24

*Brown v. Muhlenberg Twp.*,
269 F.3d 205 (3d Cir. 2001) ..................................................................................5

*Church v. City of Huntsville*,
30 F.3d 1332 (11th Cir. 1994) ............................................................................23

*City of Canton v. Harris*,
489 U.S. 378 (1989)...............................................................................................4

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983)........................................................................................*passim*

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013)...............................................................................................3

*FDA v. All. for Hippocratic Med.*,
602 U.S. 367 (2024)......................................................................................*passim*

*Flores v. Emig*,
No. 25-100-GBW, 2025 WL 2432089 (D. Del. Aug. 22, 2025).........................24

*Forum for Academic & Institutional Rights, Inc. v. Rumsfeld*,
291 F. Supp. 2d 269 (D.N.J. 2003)......................................................................35

*Foundation for Academic & Institutional Rights v. Rumsfeld,*
390 F.3d 219 (3d Cir. 2004) ..................................................................35

*Hassan v. City of New York,*
804 F.3d 277 (3d Cir. 2015) ..................................................................20

*Havens Realty Corp. v. Coleman,*
455 U.S. 363 ..................................................................28, 29, 30

*Hunt v. Wash. State Apple Advertising Commission,*
432 U.S. 333 (1977)..................................................................34

*Immigrant Defenders Law Center v. Noem,*
145 F.4th 972 (9th Cir. 2025) ..................................................................31, 32

*Immigrant Defenders Law Center v. Noem,*
No. 25-2581, Dkt. 62 (9th Cir. Aug. 7, 2025) ....................................................31

*Lujan v. Defenders of Wildlife,*
504 U.S. 555 (1992)..................................................................3

*McNair v. Synapse Grp., Inc.,*
672 F.3d 213 (3d Cir. 2012) ..................................................................3, 22, 25

*Melendres v. Arpaio,*
695 F.3d 990 (9th Cir. 2012) ..................................................................16, 17, 23

*Monell v. Dep't of Soc. Servs.,*
436 U.S. 658 (1978)..................................................................4

*Murthy v. Missouri,*
603 U.S. 43 (2024)..................................................................11, 12, 25

*N.J. Physicians, Inc. v. President of U.S.,*
653 F.3d 234 (3d Cir. 2011) ..................................................................34

*Nationwide Ins. Indep. Contractors Ass'n, Inc. v. Nationwide Mut. Ins. Co.,*
518 F. App'x 58 (3d Cir. 2013) ..................................................................34

*Ortega-Melendres v. Arpaio,*
836 F. Supp. 2d 959 (D. Ariz. 2011) ..................................................................16

iii

*PJM Power Providers Grp. v. Fed. Energy Regul. Comm'n,*
  88 F.4th 250 (3d Cir. 2023) ...............................................................34

*Potter v. Cozen & O'Connor,*
  46 F.4th 148 (3d Cir. 2022) ...............................................................13

*Ramirez v. Webb,*
  787 F.2d 592 (6th Cir. 1986) .............................................................23

*Reilly v. Ceridian Corp.,*
  664 F.3d 38 (3d Cir. 2011) ................................................................21

*Republican National Committee v. North Carolina State Board of Elections,*
  120 F.4th 390 (4th Cir. 2024) .......................................................32, 33

*Revell v. Port Auth. of N. Y. & N. J.,*
  321 F. App'x 113 (3d Cir. 2009) ........................................................15

*Rizzo v. Goode,*
  423 U.S. 362 (1976)...............................................................14, 17, 19

*Roe v. Operation Rescue,*
  919 F.2d 857 (3d Cir. 1990) ..............................................................15

*Shaw v. Jones,*
  683 F. Supp. 3d 1205 (D. Kan. 2023)................................................19

*Shaw, et al. v. Smith,*
  No. 23-3264 .......................................................................................19

*Shelby Advocates for Valid Elections v. Hargett,*
  947 F.3d 977 (6th Cir. 2020) .............................................................33

*Shelton v. Bledsoe,*
  775 F.3d 554 (3d Cir. 2015) ..............................................................24

*Shook v. Bd. of Cnty. Comm'rs of Cnty. of El Paso,*
  543 F.3d 597 (10th Cir. 2008) ...........................................................25

*Smith v. City of Chicago,*
  143 F. Supp. 3d 741 (N.D. Ill. 2015)..................................................22

iv

*Speech First, Inc. v. Shrum,*
  92 F.4th 947 (10th Cir. 2024) ................................................................35, 36

*Spokeo, Inc. v. Robins,*
  578 U.S. 330 (2016) ...........................................................................11, 12, 27

*State v. Jackson,*
  2022 WL 18401412 (Del. Super. Ct. Dec. 28, 2022, corrected Jan. 24,
  2023) ...............................................................................................................18, 19

*Suhre v. Haywood County,*
  131 F.3d 1083 .........................................................................................................22

*Summers v. Earth Island Inst.,*
  555 U.S. 488 (2009).........................................................................................34, 35

*Thomas v. Cnty. of Los Angeles,*
  978 F.2d 504 (9th Cir. 1992) .........................................................................22

*TransUnion LLC v. Ramirez,*
  594 U.S. 413 (2021)............................................................................................11

*United States v. Maury,*
  695 F.3d 227 (3d Cir. 2012) ..........................................................................17

*United States v. Texas,*
  144 F.4th 632 (5th Cir. 2025) ..................................................................31, 32

*United States v. Texas,*
  No. 24-50149, Dkt. 332 (5th Cir. Aug. 29, 2025) .................................31

*Wal-Mart Stores, Inc. v. Dukes,*
  564 U.S. 338 (2011)............................................................................................24

*Watley v. Pennsylvania,*
  No. 21-2274, 2022 WL 9721966 (3d Cir. Oct. 17, 2022) ..................22

*Yaw v. Del. River Basin Comm'n,*
  49 F.4th 302 (3d Cir. 2022) ...........................................................................21

**STATUTES & RULES**

6 *Del. C.* § 2-314 ....................................................................................................30

Rule 23(b)(2)......................................................................................................26

**OTHER AUTHORITIES**

U.S. Const., Art. III...........................................................................................2

## STATEMENT OF RELATED CASES AND PROCEEDINGS

This case has not previously been before this Court.  Counsel for Appellees are unaware of any other related cases or proceedings.

1

## **INTRODUCTION**

The well-reasoned decision of the District Court should be affirmed. Plaintiffs below exclusively brought claims for injunctive and corresponding declaratory relief against the City of Wilmington, Delaware (the "City"), and its police department (the "WPD" or the "Department"). Appellants complain of a wide variety of alleged police conduct—pedestrian stops, vehicle stops, residential searches, body-worn camera policies, police department demographics, administrative review of use-of-force complaints, and much more. But federal courts exist, and have power, to resolve only "cases or controversies," U.S. Const., Art. III, not to attempt to rectify all ills, real or perceived, with local policing. The District Court correctly determined that none of the Plaintiffs has standing to seek injunctive relief and correctly dismissed the action without prejudice based on that threshold issue.

"To establish standing a plaintiff must demonstrate (i) that she has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 368 (2024). As the Supreme Court explained in *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), individual citizens generally do not have Article III standing to seek injunctive relief in federal courts against police practices, unless they can show that

they individually are under a "real and immediate threat" of a repetition of the allegedly unconstitutional and wrongful conduct. *See Lyons*, 461 U.S. at 111; *cf. Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (injury must be "actual or imminent, not conjectural or hypothetical") (internal quotations and citation omitted).

Each Individual Plaintiff complains of one or at most two encounters with WPD officers, and none offers any reason to expect another encounter with a WPD officer will ever occur, nor that such an encounter (if it ever does occur) will involve a violation of the plaintiff's rights. *See McNair v. Synapse Grp., Inc.*, 672 F.3d 213, 223 (3d Cir. 2012) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.") (citation omitted). For standing to exist for injunctive relief, the threat of repetition of allegedly wrongful conduct cannot be speculative, hypothetical, or even merely likely; rather, the threat must be "certainly impending." *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (citation and emphasis omitted). There is no "certainly impending" harm or "immediate threat" to any of the Appellants. The Individual Plaintiffs thus lack standing. The NAACP-DE in turn lacks associational standing (*i.e.*, standing to seek injunctive relief on behalf of its members, none of whom are identified in the complaint) as well.

3

The NAACP-DE also lacks organizational standing.  An organization may have standing where it has suffered a concrete injury or will imminently suffer an injury.  *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 393 (2024). The sole basis for the NAACP-DE's claim of organizational standing is the claim that it spends, and will continue to spend, its "limited resources" to combat police misconduct.  The Supreme Court reaffirmed in *Hippocratic Medicine* that such claims do not suffice to create organizational standing.

Appellants also fail to attribute their claimed prospective injuries to the City. As the District Court noted with some understatement, J.A. #14, Opinion at 11 n.5, "the contours of Plaintiffs' municipal liability claim [under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)] are not entirely clear."  *Monell* does not authorize *respondeat superior* liability against a municipality for the unlawful actions of its employees, such as police officers.  *Monell*, 436 U.S. at 694.  Rather, "[m]unicipal liability . . . attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by city policymakers." *City of Canton v. Harris*, 489 U.S. 378, 389 (1989) (citation and quotations omitted).  The complaint does not claim that the City has any explicit policy of violating anyone's rights, and on the contrary, acknowledges that WPD's policy manual expressly prohibits racial profiling and racially biased policing.  J.A. #54-55, Amended Class Action Complaint (hereinafter cited as "Am. Compl.") ¶ 94.  Appellants therefore

4

were obliged to establish some custom that "[has] the force of law by virtue of the persistent practices of [municipal] officials." *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 215 (3d Cir. 2001) (citation omitted).  Appellants have not done so.

The District Court did not dismiss this action on standing grounds *sua sponte*, as Appellants would have it.  *See* Brief for Appellants (hereinafter cited as "OB") at 1, 9.  Defendants moved to dismiss on the basis of lack of standing, and also on the bases of failure to state a claim and the non-viability of a Rule 23(b)(2) class, both of which are closely related to the proximate causation and redressability prongs of the standing test.  The District Court acknowledged that standing (and reliance on *Lyons*) was a basis for the City's motion and analyzed the issues accordingly.

The judgment of the District Court should be affirmed.

## STATEMENT OF THE CASE

On January 31, 2024, the NAACP Delaware ("NAACP-DE"), Lamotte Johns, Tranecka Charles, Nickea Rowe, Semaj Gwyn, Natasha Green, and Anthony Green (collectively, the "Individual Plaintiffs" and with the NAACP-DE, "Appellants") filed an Amended Class Action Complaint (the "Amended Complaint") asserting the following claims against the City of Wilmington (the "City"), Wilfredo Campos and Michael Purzycki[1] : (I) Pattern and Practice of Unconstitutional Pedestrian Stops; (II) Pattern and Practice of Unconstitutional Traffic Stops; (III) Pattern and Practice of Unconstitutional Searches and Seizures of People and Homes; (IV) Pattern and Practice of Racially Biased Policing; and (V) Discrimination on the Basis of Race, Color, and National Origin in Programs and Activities Receiving Federal Financial Assistance. J.A. #56-61, Am. Compl. ¶¶ 102-136.  Aside from fees and costs, Appellants solely sought non-monetary relief.

---

[1] The parties agree that it is appropriate to substitute John Carney, who assumed the office of Mayor of Wilmington in January 2025, for Mr. Purzycki, who left that office at that time.  However, Appellees respectfully note that they sought dismissal of both Mr. Campos and Mr. Purzycki on the ground that only the City is a proper defendant in this matter. J.A. #25, D.I. 15, 16.  This action must be dismissed as to Mayor Carney for the same reasons it was appropriate to dismiss the action as to then-Mayor Purzycki.

6

In short, Appellants, through their Amended Complaint, sought prospective redress for a purported "pattern and practice of unconstitutional policing by the Wilmington Police Department under the control and oversight" of the City.  J.A. #28, Am. Compl. ¶ 1.  To support their claims, Appellants posited in conclusory fashion that the Department had several policies—none of which are written—that caused its officers to take unconstitutional actions.  Appellants also alleged that the Individual Plaintiffs, over the course of approximately two years, had a series of discrete and unconnected encounters with the Department's officers.  The allegations most relevant to this appeal can be summarized as follows.

First, the Amended Complaint alleges that, as a result of the Department's alleged unconstitutional conduct, the NAACP-DE had to expend its limited resources combating the Department's purportedly unconstitutional police practices.  Some of the activities the NAACP-DE is alleged to have engaged in are organizing rallies and projects, organizing know-your-rights events, petitioning government officials, and advocacy with lawmakers to strengthen laws holding officers accountable.  J.A. #31.  The Amended Complaint alleges that the NAACP-DE has members, including certain of the Individual Plaintiffs, that have been subject to the purported unconstitutional conduct of the Department, although not a single member is identified.  J.A. #32.

Second, the Amended Complaint includes allegations regarding encounters the Individual Plaintiffs have had with the Department's officers. These alleged encounters include the following:

*Residential Search Allegations*

- Plaintiff Lamotte Johns alleges that WPD officers searched his residence on June 27, 2023, in search of a probationer (non-party Javonte Waters) who had lived at the residence previously, but who (according to Mr. Johns) no longer lived there and was not there at the time. J.A. #39, Am. Compl. ¶¶ 35-36.

- Plaintiff Tranecka Charles alleges that WPD officers searched her residence on November 6, 2022, when she called emergency responders to the scene after a family member suddenly stopped breathing and passed away, and after another family member was arrested. J.A. #39-41, Am. Compl. ¶¶ 38-43.

- The Complaint also includes assertions relating to searches of the residences of non-parties Charles Breakley, Jr., and Terrell Dixon-El (the latter of whom was on probation at the time of the search). J.A. #41-42, Am. Compl. ¶ 44.

*Vehicle Stop Allegations*

- Plaintiff Anthony Green claims that he was stopped in his vehicle December 2023 and searched. J.A. #43, Am. Compl. ¶¶ 47-49.

- Plaintiff Nickea Rowe claims that she was stopped on two occasions, once in 2023 (at which time officers advised they were searching for a woman with a firearm), and another time "within the last two years" before the complaint was filed in January 2024 (at which time the officer advised that he believed Ms. Rowe had run a stop sign). She was not issued a ticket or warning on either occasion. J.A. #43-44, Am. Compl. ¶¶ 50-56.

8

- Plaintiff Semaj Gwyn alleges that he was stopped twice in a vehicle, once on October 25, 2023 (when he was a passenger) and once on November 2, 2023 (when he was the driver), and that WPD officers searched his vehicle on the latter occasion.  J.A. #45-46, Am. Compl. ¶¶ 59-63.

*Pedestrian Stop Allegations*

- Mr. Green alleges that he was stopped and frisked (although the complaint labels this a "search" of his person) in 2023. J.A. #46-47, Am. Compl. ¶¶ 66-67.

- Plaintiff Natasha Green alleges that she was stopped while walking to a bus stop, and asked whether she was the individual in a picture on a WPD officer's phone.  She does not allege that she was frisked.  J.A. #47, Am. Compl. ¶¶ 68-69.

The Amended Complaint also contains allegations concerning WPD's Safe Streets initiative, the Department's purported practice of not recording all stops, and past instances of securing warrants based on misleading affidavits, a practice condemned by the Delaware Superior Court in a decision expressly cited in the Amended Complaint.  J.A. #48-52.  The Amended Complaint, however, does not allege that any of the Individual Plaintiffs' encounters resulted from or were connected to any of these practices or initiatives.

## SUMMARY OF ARGUMENT

Neither the six Individual Plaintiffs nor the NAACP-DE have standing to pursue the purely injunctive, and corresponding declaratory, relief sought here.

Plaintiffs' aggregated set of disparate incidents is insufficient to show that that plaintiffs have an "immediate threat" of future injury.

The NAACP-DE does not have organizational standing, as there are no facts supporting a finding that it is at risk of suffering imminent harm. The NAACP-DE also lacks associational standing. None of its identified members have standing, and, accordingly, the NAACP-DE also lacks standing.

## ARGUMENT

The District Court correctly determined that the six Individual Plaintiffs do not have standing to seek injunctive relief, and that the organizational Plaintiff, the NAACP-DE, has neither organizational standing (*i.e.*, standing to seek injunctive relief against imminent harms threatened to its legally protected interests as an organization), nor associational standing (*i.e.*, standing to seek injunctive relief on behalf of its members against imminent harms to their legally protected interests).

"[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). "A proper case or controversy exists only when at least one plaintiff establishes that she has standing to sue. She must show that she has suffered, or will suffer, an injury that is concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Murthy v. Missouri*, 603 U.S. 43, 57 (2024) (cleaned up).

Appellants here seek solely injunctive and corresponding declaratory relief. In order to meet the "irreducible constitutional minimum" for Article III standing, therefore, Appellants must show that they are suffering "an invasion of a legally protected interest that is concrete and particularized[,] and actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338-39 (2016)

11

(quoting *Lujan*, 504 U.S. at 560) (quotations omitted).  They also must show that their imminently threatened injury is "fairly traceable to the challenged conduct of the defendant," and that it is "likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338; *see also Hippocratic Medicine*, 602 U.S. at 380.

Appellants cannot aggregate complaints of disparate conduct—allegedly wrongful traffic stops, pedestrian stops and residential searches of the Individual Plaintiffs, as well as numerous other matters unrelated to the Individual Plaintiffs—under a single umbrella term (*e.g.*, "police misconduct") for purposes of making the required showing of immediate injury, causation, and redressability.  The Supreme Court in *Murthy v. Missouri* made clear that plaintiffs cannot simply invoke past harms—in that case, past censorship of social media posts—to satisfy the standing demand to make specific causation showings.  603 U.S. at 69-70.  Generalities and unconnected events will not do.  The issue, in the Court's eyes, was not whether the government had engaged in past acts of censorship, but rather whether specific governmental actors caused specific social media platforms to remove or prohibit specific content posted by specific plaintiffs, such that it was reasonable to consider enjoining those specific actors from censoring similar content posted by those plaintiffs in the future.  *Id.* at 60 n.4.

That same standard of specificity applies to both the Individual Plaintiffs and to the NAACP-DE.  *See Hippocratic Medicine*, 602 U.S. at 369 ("Organizations

must satisfy the usual standard for injury in fact, causation and redressability that apply to individuals."). The NAACP-DE obviously is not exposed to invasion of any right not to be improperly stopped as a pedestrian or as a vehicle driver, and there is no claim that its premises or other property have been or will be searched. In order to have standing, therefore, the NAACP-DE must either show that it has organizational standing—standing to seek injunctive relief in its own right against some policy adopted by Defendants—or else associational standing—standing to seek injunctive relief on behalf of its members. It has neither type of standing.

The judgment of the District Court, dismissing this action for lack of standing, should be affirmed.

## I.    STANDARD OF REVIEW

This Court applies a *de novo* standard of review on a District Court's dismissal for lack of standing. *See Potter v. Cozen & O'Connor*, 46 F.4th 148, 153 (3d Cir. 2022) ("In reviewing a district court's dismissal for lack of standing, we consider whether the complaint contain[s] sufficient factual matter that would establish standing if accepted as true. Our standard of review on that ruling is *de novo*, accepting the facts alleged in the complaint as true and construing the complaint in the light most favorable to the non-moving party.") (internal quotations omitted).

II.   **THE DISTRICT COURT CORRECTLY DETERMINED THAT THE SIX INDIVIDUAL PLAINTIFFS LACK ARTICLE III STANDING TO SEEK INJUNCTIVE RELIEF.**

The District Court's determination that the six Individual Plaintiffs lack standing to seek injunctive relief is correct and should be affirmed. Appellants' claims for injunctive relief against the City (including WPD) are clearly barred by *Rizzo v. Goode*, 423 U.S. 362 (1976), and *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983). Those cases deal specifically with plaintiffs seeking injunctive relief against state or local police practices, and foreclose the relief sought here by the Individual Plaintiffs. Those cases are not outliers; they rely on the same test for standing to seek injunctive relief that federal courts apply in other circumstances.

In *Lyons*, the Supreme Court held that a plaintiff who allegedly was subject to an unprovoked assault and a chokehold by police officers following a traffic stop lacked standing to seek an injunction against the practice of applying chokeholds unless he could "show that he has sustained or is immediately in danger of sustaining some direct injury." *Lyons*, 461 U.S. at 101-02 (citation and internal quotations omitted). The *Lyons* Court wrote that the "injury or threat of injury must be both real and immediate, not conjectural or hypothetical." *Id.* (cleaned up).

The *Lyons* Court also held that the plaintiff lacked standing unless he could show that his imminent injury was attributable to the actions of the defendant, the City of Los Angeles. As the Court wrote, "In order to establish an actual controversy

14

in this case, Lyons would have had not only to allege that he would have another encounter with the police[,] but also to make the incredible assertion either (1) that *all* police officers in Los Angeles *always* choke any citizen with whom they happen to have an encounter, whether for the purpose of arrest, issuing a citation or for questioning or, (2) that the City ordered or authorized police officers to act in such [a] manner." *Lyons*, 461 U.S. at 105-06. Showing that some officer would harm him in the immediate future was not sufficient to obtain relief against the city; the plaintiff also needed to show that the allegedly wrongful conduct would be the result either of "orders" or "authorization" by the city, or else a universal custom among Los Angeles police officers.

Appellants seek to avoid *Lyons* and its progeny by claiming that "*Lyons* is not controlling where past practices show that the plaintiff is plausibly threatened with future injury." OB at 16. But *Lyons* is exactly on point, as the District Court correctly concluded. Courts in this Circuit have applied *Lyons* for over 40 years to assess standing of plaintiffs seeking solely declaratory or injunctive relief. Both *Roe v. Operation Rescue* and *Revell v. Port Authority of New York and New Jersey*, which Appellants cite to support their assertion, rely on *Lyons*, with *Revell* referring to it as "the seminal Supreme Court case" on the issue. *Revell v. Port Auth. of N. Y. & N. J.*, 321 F. App'x 113, 117 (3d Cir. 2009); *Roe v. Operation Rescue*, 919 F.2d 857 (3d Cir. 1990).

15

Appellants' actual argument is not that *Lyons* "is not controlling," but rather that the imminent injury and causation prongs of *Lyons* are met when, as Appellants put it, "past practices show that the plaintiff is plausibly threatened with future injury." OB at 16. That argument, however, represents an extraordinary weakening of what the *Lyons* Court actually said, and nothing in the Ninth Circuit decision on which Appellants rely—*Melendres v. Arpaio*, 695 F.3d 990, 998 (9th Cir. 2012)— supports that attempt to undermine the clear legal standard established by the Supreme Court. In *Melendres*, both the district court and the court of appeals relied expressly on a stated policy of the defendant, a county sheriff in Arizona. As the Ninth Circuit wrote, the district court's ruling on standing "rest[ed] on the… express claim of authority to detain persons [defendant believes] are not authorized to be in the country. . . . based only upon a reasonable suspicion, without more, that the person is not legally present within the United States." 695 F.3d at 998.[2] That is, the "causation" prong of the standing test was met in *Melendres* by an express statement of policy, namely that the sheriff had "ordered or authorized" deputies to

---

[2] *See also Ortega-Melendres v. Arpaio*, 836 F. Supp. 2d 959, 979 (D. Ariz. 2011) ("In the unique circumstances of this case, Defendants' assertions about the scope of their authority to stop persons to investigate potential violations of the state smuggling statute establish that plaintiffs are sufficiently likely to be seized in violation of the Fourth Amendment to provide them with standing to seek injunctive relief…. In supplemental briefing and at oral argument, Defendants asserted that MCSO officers could briefly detain people "based only upon a reasonable suspicion, without more, that the person is not legally present within the United States.") (internal quotation omitted).

16

act in a manner allegedly inconsistent with the plaintiff's rights. It does not follow that the Individual Plaintiffs here meet the "causation" test by claiming a "pattern of officially sanctioned behavior" that has no official sanction at all. *Compare Rizzo*, 423 U.S. at 375-76. *Melendres* is simply inapposite.[3]

Nor does *Melendres* help Appellants with the imminence prong. The sheriff in *Melendres* had an express policy of trying to find and (allegedly wrongfully) arrest persons similarly situated to the plaintiff in that case, *i.e.*, persons suspected of being present in the United States unlawfully. WPD has no comparable policy directed at the Individual Plaintiffs or persons situated similarly to them. Appellants' factual claims of "officially sanctioned misconduct" are both backward-looking and unrelated to any of the claims of wrongdoing against the Individual Plaintiffs. To argue that WPD has engaged in past unlawful conduct directed against others, even if true, does not show that the Individual Plaintiffs are imminently exposed to different unlawful conduct.[4]

---

[3] Moreover, *Melendres*, as an out-of-circuit decision, is not controlling on this Court. *See United States v. Maury*, 695 F.3d 227, 259 n.27 (3d Cir. 2012) ("Of course, the decisions of other circuits, while persuasive, are not binding on the district courts in this Circuit."). And *Rizzo* expressly rejected the claim that "invocation of the word 'pattern' in a case where . . . the [municipality and municipal office-holder] defendants are not causally linked to it" could suffice to meet the standing test. 423 U.S. at 375-76.

[4] Appellants' argument on this point illustrates the difficulty they would have formulating an injunction with the specificity required by Rule 65(d), highlighting why this case was rightly dismissed. Appellants' position appears to be that the

In their Opening Brief, Appellants argue that several allegations unrelated to the incidents involving the Individual Plaintiffs plausibly show that Defendants have engaged in a pattern of misconduct sufficient to support a reasonable inference that the Individual Plaintiffs will be mistreated again in the future. None of those assertions, separately or in combination, show that the Individual Plaintiffs have standing to seek injunctive relief, and the cases Appellants cite, which are largely from outside this Circuit, are inapposite or distinguishable.

First, Appellants point to testimony by a WPD corporal that he secured an arrest warrant by stating that he had obtained information from a "confidential informant," when in reality he had found the information via public social media posts, and that he was trained by WPD to frame his requests for arrest warrants based on social media posts in this manner. J.A. #51-52, Am. Compl. ¶¶ 80-83; OB at 8. None of the Individual Plaintiffs was arrested based on a warrant obtained in such a manner. The person who allegedly *was* arrested based on such a warrant, Deonte Robinson, is not a plaintiff here. And there is no allegation in the complaint that WPD *continues* this practice. Indeed, it is difficult to imagine why WPD would do so given that the very Delaware Superior Court decision cited in the complaint—
*State v. Jackson*, 2022 WL 18401412 (Del. Super. Ct. Dec. 28, 2022, corrected Jan.

relevant "pattern" that they seek to have enjoined can only be stated at a high level of abstraction, *e.g.*, "violating citizens' constitutional rights."

18

24, 2023), cited in J.A. #51, Am. Compl. ¶ 81—contains a footnote expressly disapproving the practice. *See Jackson*, 2022 WL 18401412, at *5 n.50 ("To be clear, it is NOT 'acceptable' for a law enforcement officer to aver under oath that his own observation via social media surveillance was instead information provided by a 'confidential informant.'").

Second, Appellants claim that WPD allows its Operation Safe Streets officers to communicate on unrecorded radio frequencies and not to record "stops or searches that do not result in arrests." OB at 17-18. The District Court correctly recognized that this policy, if it actually does exist, has nothing to do with race but is instead facially neutral. J.A. #10. And this supposed policy has nothing to do with the alleged incidents involving the Individual Plaintiffs. The allegations in the complaint do nothing to show either that any of the Individual Plaintiffs is in danger of repeated adverse treatment as a result of the alleged policies, or that those policies play any causal role in any such conduct.[5]

---

[5] The *Shaw* case cited by Appellants is non-binding, likely inconsistent with *Lyons*, and inapposite in any event. It is an out-of-circuit district court post-trial decision that is currently under submission on appeal at the Tenth Circuit. The police appellants there expressly raised in their appellate briefing the plaintiffs' lack of standing to seek injunctive relief, including under the Supreme Court's *Rizzo* and *Lyons* decisions. *Shaw, et al. v. Smith*, No. 23-3264, Appellant Brief (10th Cir. Apr. 24, 2024). And even assuming *Shaw*'s standing analysis is correct on its merits, the decision does not say, as Appellants assert, that the "Kansas Highway Patrol's practice of not recording stops that did not result in an arrest is relevant on the *Lyons* issue." *See Shaw v. Jones*, 683 F. Supp. 3d 1205, 1244-45 (D. Kan. 2023). Nor does it stand for some broader proposition that a court may infer that people are

Third, Appellants claim a general pattern of "racial bias" at WPD, including "racially disparate stops and searches of Black drivers and pedestrians,"[6] a black WPD captain who displayed a "Whitest Black Guy in the Office" trophy (a practice the complaint concedes ended in February 2022), and allegations relating to searches of two individuals (one a probationer) neither of whom is a named plaintiff. None of this has anything to do with Appellants. And the decision of this Court that they cite, *Hassan v. City of New York*, 804 F.3d 277, 289-90 (3d Cir. 2015), is distinguishable for at least two reasons, including that (i) it is a damages case, not an injunction case, and thus does not analyze the issues of imminent harm or injunctive standing more generally, and (ii) it involved an alleged formal surveillance program directed specifically at individuals, businesses, and institutions based on their affiliation with a specific religion (Islam). Nothing comparable is alleged here. The Amended Complaint acknowledges that the Department "has a policy prohibiting racial profiling," *see* J.A. #54, Am. Compl. ¶ 94, and there are no

---

imminently exposed to wrongful conduct based on police reporting policies that may not record all encounters with the public.

[6] The Complaint does not include non-speculative factual allegations about "racially disparate stops and searches of Black drivers and pedestrians." The cited paragraphs in the Amended Complaint, paragraphs 86-89, are about the racial demographics of WPD officers and of the City's population, not about stops and searches. The Amended Complaint does include allegations about the racial breakdown of persons *arrested* after traffic stops made by three specific officers, over an eleven-month period between 2019 and 2020, but says nothing about "racially disparate stops and searches." J.A. #37, 49-50, Am. Compl. ¶¶ 29, 76-77.

allegations of an unwritten policy or general practice to target black individuals for stops or searches. Accordingly, the District Court correctly concluded that "the Individual Plaintiffs have not plead[ed] factual allegations from which it is reasonable to infer that an unconstitutional policy currently exists and may be acted upon." J.A. #13, Opinion at 10.

Finally, the allegations surrounding each of the Individual Plaintiffs' encounters with the WPD fail to support "a reasonable inference that [those] Plaintiffs and others in the proposed class will be unconstitutionally stopped again in the future."[7] OB at 19. Because Appellants are seeking prospective relief, "they cannot base their standing on past injuries." *Yaw v. Del. River Basin Comm'n*, 49 F.4th 302, 318-19 (3d Cir. 2022). And the law is clear that "[a]llegations of '*possible future injury*' are not sufficient to satisfy Article III." *Reilly v. Ceridian Corp.*, 664 F.3d 38, 42 (3d Cir. 2011) (citation omitted) (emphasis added). Appellants' out-of-circuit authorities, to the extent they are correct and consistent with *Lyons*, either

---

[7] Once again, Appellants' brief makes inaccurate suggestions about the facts alleged in the Amended Complaint. Appellants say that "officers showed up at [Plaintiff Lamotte Johns's] residence without probable cause or consent twice in a two-month span." OB at 18-19. According to the Amended Complaint, however, they only searched his home (looking for a roommate who was on probation) on one of those occasions. J.A. #38-39, Am. Compl. ¶ 35. Plaintiffs Semaj Gwyn and Anthony Green both allege "multiple"—meaning two apiece—traffic stops, but in one of those incidents, Mr. Gwyn was a passenger rather than the driver, and the allegations regarding all four of them contain no non-conclusory basis to assume that the traffic stops were without lawful cause. J.A. #17, 19-20, Am. Compl. ¶¶ 46-49, 57-63.

involve vastly more egregious factual patterns, *see Thomas v. Cnty. of Los Angeles*, 978 F.2d 504, 506 (9th Cir. 1992) (seventy-five plaintiffs, mostly within a six by seven block area, alleged "malicious and pervasive" misconduct including beatings and mock executions by sheriff's deputies), or challenges to official policies, *see Smith v. City of Chicago*, 143 F. Supp. 3d 741 (N.D. Ill. 2015) (challenge to Chicago stop-and-frisk program); *Suhre v. Haywood County*, 131 F.3d 1083, 1085 (frequent litigant, described as a "contentious character," had standing to challenge display of Ten Commandments in county courthouse).

As described above in the Statement of the Case, the facts and circumstances surrounding each of the Individual Plaintiffs' encounters are unique and unconnected. Accordingly, there is no likelihood that any of the Individual Plaintiffs will be in the same situation again. Thus, "the wholly conjectural future injury [Plaintiffs] rely on does not, and cannot, satisfy the constitutional requirement that a plaintiff seeking injunctive relief must demonstrate a likelihood of future harm." *McNair v. Synapse Grp. Inc.*, 672 F.3d 213, 225 (3d Cir. 2012); *see also Watley v. Pennsylvania*, No. 21-2274, 2022 WL 9721966, at *3 (3d Cir. Oct. 17, 2022) (affirming dismissal for lack of standing of claim by Connecticut resident that he had been unconstitutionally stopped and cited on three prior occasions for traffic violations in Pennsylvania, and commenting that plaintiff's "asserted injury would require him travel to Pennsylvania, be stopped for a traffic violation, and receive a

22

ticket for that violation. . . . This chain of events is too hypothetical to support an inference that [Plaintiff's] allegations of standing are plausible.").

Appellants further argue that it is more likely that the Individual Plaintiffs will be stopped again because the complaint includes conclusory allegations that several of them were stopped "while they were engaged in their innocent daily routines[.]" OB at 20. The Amended Complaint itself, however, provides the reason for many of the stops (*e.g.*, running stop sign, police looking for suspect, *see supra*), and in other cases does not even offer a conclusory assertion that the stop had no basis. It cannot be reasonably inferred that it is a practice or policy of WPD officers to stop people in their everyday routines without cause. Regardless, unlike the cases cited by Appellants, there are no non-conclusory allegations that their encounters were the result of a common unconstitutional policy, practice, or custom that would make it likely that any Individual Plaintiff will be stopped again while engaging in innocent, routine activities. Accordingly, Appellants have failed to plausibly allege that they are likely to be stopped again while going about their normal and lawful routines.[8]

---

[8] Again, the out-of-circuit cases Appellants cite are distinguishable, to the extent they are consistent with *Lyons* in the first place. *See Melendres*, 695 F.3d at 998 (finding standing where defendants had expressly claimed they had authority to detain person based solely on reasonable suspicion that the person was not lawfully present in the United States); *Church v. City of Huntsville*, 30 F.3d 1332, 1339 (11th Cir. 1994) (concluding allegations sufficient for standing where plaintiffs alleged the defendant had a custom, practice and policy of interfering with and destroying the personal property of unhoused people, with the goal of removing them from the city entirely); *Ramirez v. Webb*, 787 F.2d 592 (6th Cir. 1986) (TABLE) (unpublished

23

Additionally, it is notable that Appellants did not seek to add further allegations to the Amended Complaint at any time in the nearly two years since it was filed.  This supports the conclusion that it is not reasonably certain problematic police encounters will occur again, because evidently they have not.  *See Flores v. Emig*, No. 25-100-GBW, 2025 WL 2432089, at \*4 (D. Del. Aug. 22, 2025) (concluding plaintiffs had not sufficiently alleged they would be subject to alleged unconstitutional conduct again in part based on the fact that no additional incidents had occurred in the last five months).

Finally, Appellants assert that they have alleged "facts that would support class certification under Federal Rule of Civil Procedure … 23(b)(2)." OB at 22.  Not so, and that is why Defendants moved below to strike the class allegations.  J.A. #25, D.I. 15.  The proposed class lacks cohesiveness as required under *Shelton v. Bledsoe*, 775 F.3d 554, 560 (3d Cir. 2015), and *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 143 (3d Cir. 1998).  The key issue for a (b)(2) class is "the indivisible nature of the injunctive or declaratory [relief] warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011) (citation omitted).  "Individual issues cannot be avoided simply by formulating an injunction

---

table decision with a concurring opinion expressing significant doubt on the *Lyons* analysis among other issues).

24

at a stratospheric level of abstraction. . . . [I]njunctions simply requiring the defendant to obey the law are too vague to satisfy Rule 65." *Shook v. Bd. of Cnty. Comm'rs of Cnty. of El Paso*, 543 F.3d 597, 604 (10th Cir. 2008) (citation omitted). Nor can attempting to plead class claims solve the Individual Plaintiffs' lack of Article III standing to seek injunctive relief, both because there is no reason to think that other putative class members will have any better claim to standing than the Individual Plaintiffs have, and because the case cannot continue unless at least one named plaintiff has standing. *See McNair v. Synapse Grp. Inc.*, 672 F.3d 213, 223 (3d Cir. 2012) (collecting cases); *see also Murthy*, 603 U.S. at 57.

Appellants have not identified a common unconstitutional policy adopted by the Defendants that imminently threatens to violate their rights. Even if their specific claims of police wrongdoing are regarded as accurate (despite their conclusory nature), that does not give the Individual Plaintiffs any better claim to standing than the plaintiff in *Lyons*, who also argued that not only had he been illegally subjected to a chokehold, but that police officers in the city routinely applied chokeholds when not threatened by deadly force, *i.e.*, that there was a pattern of abusive policing. *Lyons*, 461 U.S. at 106. In order to have standing to seek injunctive relief against the municipality, the Individual Plaintiffs needed to show that the conduct they complain of is universal, that it is explicit or implicit policy of the WPD to violate their rights in a specific way. The named Plaintiffs complain of different types of

25

encounters with WPD officers—of *Terry* stops, traffic stops, vehicle and residential searches—but cannot point to anything suggesting an unlawful policy targeting them or the members of the putative class. In Rule 23 terms, there is no showing that the Defendants have "acted or refused to act on grounds that apply generally to the class." Fed. R. Civ. P. 23(b)(2).

The District Court thus correctly concluded that the Individual Plaintiffs lack Article III standing to pursue injunctive or declaratory relief.

## III. THE DISTRICT COURT CORRECTLY HELD THAT THE NAACP-DE DOES NOT HAVE ARTICLE III STANDING TO SEEK INJUNCTIVE OR DECLARATORY RELIEF.

For an organization to have standing, it must either have organizational standing (*i.e.*, standing resulting from the organization's own injuries), or associational standing (*i.e.*, standing to assert claims on behalf of its members). As the District Court correctly concluded, the NAACP-DE has neither here.

### A. The NAACP-DE Does Not have Organizational Standing.

Appellants fail to plead that the NAACP-DE has organizational standing. The Supreme Court's *Hippocratic Medicine* decision—issued after briefing was complete in the District Court—removes any doubt on this point.

Organizations "may have standing 'to sue on their own behalf for injuries they have sustained.'" *Hippocratic Medicine*, 602 U.S. at 393 (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 n.19). To do so, "organizations must satisfy

the usual standards for injury in fact, causation, and redressability that apply to individuals." *Id*. at 369 (citing *Havens Realty*, 455 U.S. at 378-79). The NAACP-DE, "as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Spokeo, Inc. v Robins*, 578 U.S. at 338 (citing *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990)). "Where, as here, a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element." *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

An organization "may not establish standing simply based on the intensity of the litigant's interest or because of strong opposition to the government's conduct, no matter how longstanding the interest and no matter how qualified the organization." *Hippocratic Medicine*, 602 U.S. at 394 (cleaned up). Of particular note here, given the NAACP-DE's arguments, "an organization that has not suffered a concrete injury caused by a defendant's action cannot spend its way into standing simply by expending money to gather information and advocate against the defendant's action." *Id.* In other words, the NAACP-DE "cannot manufacture its own standing in that way." *Id.* As the District Court correctly held, the "NAACP-DE cannot demonstrate that the harm to it … is 'imminent' or 'certainly impending.'" JA 12 (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 407-09 (2013)).

The sole basis for NAACP-DE's claim of organizational standing is the claim that it spends, and will continue to spend, its "limited resources" to combat police misconduct, including allegedly unconstitutional conduct toward members of the black community.  OB at 14-15 (citing J.A. #31, Am. Compl. ¶ 12).  That is exactly the kind of effort to manufacture standing by means of spending that the Supreme Court rejected in *Hippocratic Medicine*.

In that case, the Court explicitly rejected the theory, advanced by the plaintiff medical associations relying on *Havens Realty Corporation v. Coleman*, that "standing exists when an organization diverts its resources in response to a defendant's actions."  *Hippocratic Medicine*, 602 U.S. at 395.  The Court rejected that argument because "that theory would mean that all organizations in America would have standing to challenge almost every federal policy that they dislike, provided they spend a single dollar opposing those policies." *Id.*  The Court noted that "*Havens* was an unusual case, and this Court has been careful not to extend the *Havens* holding beyond its context." *Id.* at 396.

*Havens Realty* was an informational-injury case.[9]  The organizational plaintiff there (HOME) asserted that it had the right under Section 804(d) of the Fair Housing

---

[9] Importantly, *Havens Realty* was also, as to the organizational plaintiff, a damages case rather than an injunctive relief case.  *See* 455 U.S. at 378 ("While we . . .  will not decide the question involving HOME's representative [*i.e.*, associational] standing, we do proceed to decide the question whether HOME has standing in its

Act not to be subjected to untruthful statements about the availability of housing, but when HOME sent two employees (one white and one black) to inquire about the availability of housing in a specific complex owned by the defendant, the white "tester" was told that housing was available but the black "tester" was told that housing was unavailable. That alleged statutory violation was the underlying predicate for HOME's claim that the defendant had inflicted harm on its ability to provide "counseling and referral services" to persons seeking to live in racially integrated housing. *Havens Realty*, 455 U.S. at 363. The defendant allegedly invaded a statutorily-protected interest belonging to the plaintiff organization as such, and the increased cost of providing "referral and counseling services" was the proposed measure of damages for the underlying wrong. The decision does not mean that an organizational plaintiff can demonstrate an injury by arguing that a defendant's actions have increased its costs, without any underlying predicate claim belonging to the organization as such in its own right.

Appellants seize on a phrase in *Hippocratic Medicine*'s discussion of *Havens Realty*, that the actions of the defendant there "directly affected and interfered with HOME's core business activities—not dissimilar to a retailer who sues a

---

own right [*i.e.*, organizational]; the organization continues to press *a right to claim damages* in that latter capacity.") (emphasis added).

manufacturer for selling defective goods to the retailer."[10]  602 U.S. at 394.  The NAACP-DE takes the phrase "core business activities" to signify that as long as it can assert some increased cost to an activity that it can describe as "core" to its "business," it has asserted an injury-in-fact sufficient to support standing.  That is an incorrect reading of the case.

Appellants' reading creates the exception that swallows the rule.  The NAACP-DE appears to be arguing that its advocacy efforts simply *are* its "core business activities," such that anything that conflicts with or frustrates its advocacy goals, or causes resources to be reallocated among its multiple advocacy goals, inflicts an injury-in-fact that confers standing.  OB at 11 (claiming the NAACP-DE will incur harms "in combating the practices and policies of the WPD"); 15 (arguing the WPD's actions "run directly contrary to the core organizational purpose of NAACP-DE of combatting police misconduct"); 16 (claiming the WPD's conduct "substantially interferes with NAACP-DE's core mission to eliminate official

---

[10] Note that with this analogy, as in *Havens Realty*, there is a predicate wrong. When a manufacturer sells goods to a retailer or a distributor, the goods come with an implied warranty of merchantability, just as they do when the retailer sells those same goods to a consumer. *See, e.g.*, 6 *Del. C.* § 2-314; *Ballard Concrete v. CDE Glob., ID*, 2025 WL 3083282, at *9 (Del. Super. Ct. Nov. 3, 2025) ("Unless there is a valid disclaimer, these implied warranties are implied in *every* sales transaction involving goods.") (emphasis added). If the manufacturer sells defective goods to the retailer, the manufacturer has breached that warranty, and it may be liable to the retailer for the retailer's increased costs (in the form of refunding the consumer's purchase price, paying for the consumer's repairs, or otherwise making good on its own warranty of merchantability to the consumer).

misconduct and race-based discrimination"). This is flatly inconsistent with *Hippocratic Medicine*. "[A]n organization that has not suffered a concrete injury caused by a defendant's action cannot spend its way into standing simply by expending money to gather information and advocate against the defendant's action. An organization cannot manufacture its own standing in that way." *Hippocratic Medicine*, 602 U.S. at 394.

Plaintiffs rely on several out-of-circuit decisions, far removed from the criminal justice context of this case, that also read *Hippocratic Medicine* incorrectly. Two of them—*Immigrant Defenders Law Center v. Noem*, 145 F.4th 972 (9th Cir. 2025), and *United States v. Texas*, 144 F.4th 632 (5th Cir. 2025)—are 2-1 panel decisions on immigration law, featuring extended dissenting opinions pointing out the problems with the majorities' readings. *Immigrant Defenders*, 145 F.4th at 996-1013 (Nelson, J., dissenting); *United States v. Texas*, 144 F.4th at 695-702 (Oldham, J., dissenting). The Fifth Circuit has granted a petition for rehearing *en banc*, and such a petition is also pending at the Ninth Circuit. *United States v. Texas*, No. 24-50149, Dkt. 332 (5th Cir. Aug. 29, 2025); *Immigrant Defenders Law Center v. Noem*, No. 25-2581, Dkt. 62 (9th Cir. Aug. 7, 2025). In both of those cases, the majority upheld organizational standing for advocacy organizations on the basis that they provided counseling or legal services to immigrants, and that the challenged government actions caused diversions of resources away from that activity and/or

interfered with the organizations' advocacy missions.  As both dissenting judges pointed out, these "diversion" and "frustration" theories do not suffice in the absence of a harm directly against the organizational plaintiffs, as the Supreme Court made clear in *Hippocratic Medicine*.  *Immigrant Defenders*, 145 F.4th at 1005; *United States v. Texas*, 144 F.4th at 696-97; *cf. Hippocratic Medicine*, 602 U.S. at 395.[11] The majority rulings in *Immigrant Defenders* and *United States v. Texas* apply *Hippocratic Medicine* incorrectly, and this Court should not follow their reasoning.

Appellants' remaining precedent, the Fourth Circuit's decision in *Republican National Committee v. North Carolina State Board of Elections*, 120 F.4th 390 (4th Cir. 2024), is also of doubtful merit.  The parties there agreed that the plaintiffs— the Republican National Committee and the Republican Party of North Carolina— had standing, leading to Judge Diaz remarking in concurrence that the case was an odd one for a robust analysis of Article III standing.  *Id.* at 408 n.1.  The panel opinion resolves the standing issue based on its assessment that the plainitffs' "core business activities" included "counsel[ing] voters to support Republican candidates," and that defendants' alleged failure to rectify problems with voter

---

[11] In addition, Judge Nelson pointed out that *Hippocratic Medicine* had effectively overruled much of the Ninth Circuit's organizational standing precedent, but that the majority relied on that precedent in defiance of the Supreme Court.  145 F.4th at 1004.  And Judge Oldham pointed out that Fifth Circuit precedent was *consistent* with *Hippocratic Medicine*, but that the panel majority disregarded that precedent.  144 F.4th at 697-98.

registration lists interfered with and/or diverted resources away from that mission. *Id.* at 397 (majority opinion), 411-12 (concurring opinion).  That is not the correct test under *Hippocratic Medicine*, as explained above.  As the Sixth Circuit rightly observed in rejecting an advocacy organization's standing argument, spending money to 'bring, fund and participate in this litigation' and spending its resources 'to address the voting inequities and irregularities' throughout the county—do not divert resources from [the organization's] mission.  That is its mission." *Shelby Advocates for Valid Elections v. Hargett*, 947 F.3d 977, 982 (6th Cir. 2020).  Similarly here, the NAACP-DE's "core mission," to the extent relevant, includes advocating for reform of police practices.  OB at 4; J.A. #31-32, Am. Compl. ¶ 12.  This case is one piece of its overall work.  There has been no non-conclusory showing of any "diversion of resources" or "frustration of mission," but even if there were, that would not give the NAACP-DE organizational standing.

The Amended Complaint fails to plausibly allege that the NAACP-DE will suffer imminent harm or is otherwise entitled to injunctive or declaratory relief.  Accordingly, the District Court's decision that the NAACP-DE lacks organizational standing should be affirmed.

### B.  The NAACP Does Not Have Associational Standing.

The District Court also correctly determined that the NAACP-DE lacks associational standing.  To establish associational standing, an organization must

demonstrate that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advertising Commission*, 432 U.S. 333, 343 (1977); *see also PJM Power Providers Grp. v. Fed. Energy Regul. Comm'n*, 88 F.4th 250, 265 (3d Cir. 2023). Because the NAACP-DE fails the first of these tests, it lacks associational standing.

An organization seeking to establish associational standing must "make specific allegations . . . that at least one identified member had suffered or would suffer harm." *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009). For the reasons already discussed (*supra* Argument, Section I), the Amended Complaint fails to plead that any of the named Plaintiffs, or any other individual (whether a member of the NAACP-DE or not) has standing to seek injunctive relief. For that reason alone, the NAACP-DE lacks associational standing. *See N.J. Physicians, Inc. v. President of U.S.*, 653 F.3d 234, 241 (3d Cir. 2011) (holding that the complaint failed to establish that the only member of organization identified in the complaint had experienced an injury and therefore organization lacked associational standing) (citing *Summers*, 555 U.S. 488); *see also Nationwide Ins. Indep. Contractors Ass'n, Inc. v. Nationwide Mut. Ins. Co.*, 518 F. App'x 58, 63 (3d Cir. 2013) (same).

34

The Amended Complaint includes only vague and conclusory allegations that unidentified members of the NAACP-DE have suffered or will suffer harm.  *See* J.A. #30, 32, 38, 46, 48; Am. Compl. ¶¶ 10, 13, 34, 64, 71.  That does not suffice to demonstrate the NAACP-DE's associational standing, and the cases on which Appellants rely are inapposite and do not support any other conclusion.  *Foundation for Academic & Institutional Rights v. Rumsfeld*, 390 F.3d 219 (3d Cir. 2004), was decided before *Summers* and, to the extent it holds that an organizational plaintiff need not identify a member with standing in order to sue in a representative capacity, it is no longer good law.  As the Supreme Court explained in *Summers*, an organizational plaintiff suing on behalf of its members must "make specific allegations establishing that at least one identified member had suffered or would suffer harm." *Summers*, 555 U.S. at 498.[12]

The Tenth Circuit's decision in *Speech First, Inc. v. Shrum*, 92 F.4th 947 (10th Cir. 2024) concerned three members of the plaintiff organization who submitted declarations under pseudonyms describing the harm each had suffered.  *Id.* at 948-

---

[12] Appellants' assertion that the plaintiff in *Foundation for Academic & Institutional Rights* did not reveal its membership list at the pleadings stage is inaccurate.  The district court noted that the plaintiff submitted its membership list for *in camera* review.  *See Forum for Academic & Institutional Rights, Inc. v. Rumsfeld*, 291 F. Supp. 2d 269, 286 n.6 (D.N.J. 2003).  And in any event, the issue is not whether the NAACP-DE was required to disclose its membership list in its totality, but rather whether at least one human being who is an NAACP-DE member has Article III standing.  That is what the NAACP-DE was obliged, but failed, to show.

49. The "sole issue before [the court] on appeal [was] whether the use of pseudonyms by the declarants precluded Speech First from establishing Article III standing to bring this action." *Id.* at 949. Appellants here have not submitted any declarations, and the issue of pseudonyms is not before the Court in this case. The problem is not that a plaintiff (or any other NAACP-DE member) with standing to seek injunctive relief is proceeding under a pseudonym. The problem is that the NAACP-DE has not shown that *any* member, pseudonymous or not, possesses standing.

Likewise, *Advocates for Highway & Auto Safety v. Federal Motor Carrier Safety Administration*, 41 F.4th 586 (D.C. Cir. 2022), another out-of-circuit decision, involved a petition for review of agency rulemaking governing commercial motor vehicle operators, and the plaintiff organization satisfied the associational standing requirement with survey data from specifically identified Teamsters union members—commercial drivers—who would be affected by the regulation. The court determined that this form of specific identification of association members who had standing to sue in their own right was sufficient, and that affidavits were not required. *Id.* at 593-94. The record here contains nothing similar.

Finally, Appellants' reliance on *Alabama Legislative Black Caucus v. Alabama*, 575 U.S. 254 (2015) is misplaced. That case does not stand for the broad proposition that "allegations that an organization has members 'statewide' and in

36

'almost every county' is [sic] sufficient to identify injured members for the purposes of associational standing," as Appellants assert. OB at 24. *Alabama Legislative Black Caucus* involved a challenge to allegedly race-based redistricting plans for Alabama's legislature; only individuals residing in the allegedly improperly gerrymandered districts had standing. *Alabama Legislative Black Caucus*, 575 U.S. at 258. The district court *sua sponte* held that the Alabama Democratic Conference had not shown it had members in the relevant districts and dismissed the case for lack of standing. *Id.* at 268. The Supreme Court remanded to allow the district court to "reconsider the Conference's standing by permitting the Conference to file its list of members and permitting the State to respond, as appropriate." *Id.* at 271. The Supreme Court gave the plaintiff another chance to prove that its members had standing; it did not say that an allegation of members "statewide" and "in nearly every county" sufficed to demonstrate standing. In this case, the NAACP-DE has not identified any member—named Plaintiff or otherwise—who has Article III standing. And the NAACP-DE effectively rejected its opportunity to cure that defect. Even after the District Court dismissed the case without prejudice on standing grounds, the NAACP-DE did not seek to amend to identify one or more of its members with Article III standing. The Amended Complaint's allegations on this matter are conclusory, J.A. #30, 32, 46, Am. Compl. ¶¶ 8, 13, 64, and there is no

37

reason to give the NAACP-DE yet another opportunity to try to correct this obvious defect.

The District Court's decision that the NAACP-DE lacks associational standing in this case should be affirmed.

## **CONCLUSION**

The judgment of the District Court dismissing this action should be affirmed.

*/s/ Kelly E. Farnan*
John D. Hendershot (#4178)
Kelly E. Farnan (#4395)
Christine D. Haynes (#4697)
Sara M. Metzler (#6509)
Richards, Layton & Finger, P.A.
920 N. King Street
Wilmington, DE 19801
(302) 651-7700
hendershot@rlf.com
farnan@rlf.com
haynes@rlf.com
metzler@rlf.com

Rosamaria Tassone-DiNardo (#3546)
City of Wilmington Law Department
Louis L. Redding City/County Building
800 N. French Street, 9th Floor
Wilmington, DE 19801
(302) 576-2175

Dated: January 7, 2026

## <u>COMBINED CERTIFICATIONS</u>

I, Sara Metzler, hereby certify that:

1.     This brief complies with the type-volume requirements of Federal Rules of Appellate Procedure 32(a)(7)(B) because it contains 8,912 words (excluding the parts of the brief exempted by Appellate Rule 32(f)), as counted using the word-count function on Word for Microsoft Office.

2.     This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Appellate Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Word for Microsoft Office in 14-point Times New Roman type.

3.     Moreover, I further certify pursuant to this Court's Local Appellate Rules 28.3(d) and 46.1(e), that I, Sara Metzler, as the signatory on the foregoing document, was admitted to the Bar of this Court on January 5, 2026, and am a member in good standing with the Bar of this Court.

4.     The text of the electronic brief is identical to the text in the paper copies.

5.     A virus detection program (namely, Microsoft Safety Scanner v1.409, (build 1.409.36.0)) has been run on the file and no virus was detected.

Dated:  January 7, 2026                                  */s/ Sara M. Metzler*
                                                         Sara M. Metzler

**CERTIFICATE OF SERVICE**

I, Sara Metzler, hereby certify that on January 7, 2026, the foregoing Brief of Appellant was filed with the Clerk of this Court using the CM/ECF system, which will send notification of such filing to all counsel of record, and were sent via UPS to the Clerk of this Court.

Dated:  January 7, 2026          */s/ Sara M. Metzler*
                                      Sara M. Metzler