**No. 25-2576**

**UNITED STATES COURT OF APPEALS**
**FOR THE THIRD CIRCUIT**

NAACP DELAWARE, LAMOTTE JOHNS, TRANECKA CHARLES, NICKEA ROWE, SEMAJ GWYN, NATASHA GREEN, & ANTHONY GREEN
Appellants/Plaintiffs Below

v.

CITY OF WILMINGTON, WILFREDO CAMPOS in his official capacity as CHIEF OF POLICE of the WILMINGTON POLICE DEPARTMENT, & JOHN CARNEY in his official capacity as MAYOR OF WILMINGTON
Appellees/Defendants Below

On Appeal from the United States District Court
For the District of Delaware
C.A. No. 23-1205-GBW
Judge Gregory B. Williams

**REPLY BRIEF**

*/s/ Dwayne J. Bensing*
Dwayne J. Bensing (DE #6754)
dbensing@aclu-de.org
*/s/ Jared Silberglied*
Jared Silberglied (PA #336118)
jsilberglied@aclu-de.org

ACLU of Delaware
100 W. 10th St. #706
Wilmington, DE 19801
(302) 295-2113

*/s/ David Rudovsky*
David Rudovsky (PA #15168)
KAIRYS RUDOVSKY
MESSING FEINBERG & LIN, LLP
The Cast Iron Building
718 Arch St. Suite 501 South
Philadelphia, PA 19106
drudovsky@krlawphila.com
(215) 925-4400

*Attorneys for Appellants*

Dated: February 11, 2026

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................1

ARGUMENT ......................................................................................................2

   I. **The NAACP-DE has Organizational Standing**................................................2

      A. Alliance *does not Impair the NAACP-DE's Organizational Standing*..........2

      B. *Appellate Court Cases Construing* Alliance *Support NAACP-DE's Organizational Standing Claim*................................................................................4

   II. **The Individual Plaintiffs Have Standing**........................................................7

   III. *Summers* **Does Not Provide Grounds to Deny NAACP-DE's Associational Standing, as Demonstrated by** *Alabama Legislative Black Caucus* ................................................................................................13

CONCLUSION ................................................................................................15

# TABLE OF AUTHORITIES

**Cases**                                                 **Page**

*Ala. Legislative Black Caucus v. Alabama*,
575 U.S. 254 (2015)..................................................................6, 13

*Allee v. Medrano*,
416 US. 802 (1974).........................................................................8

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983)..........................................................................7

*Com. of Pennsylvania. v. Porter*,
659 F.2d 306 (3d Cir. 1981)..........................................................10

*DeShawn E. by Charlotte E. v. Safir*,
156 F.3d 340 (2d Cir. 1998).........................................................10

*F.D.A. v. Alliance for Hippocratic Med.*,
602 U.S. 367 (2024)....................................................................2, 3

*Friends of the Earth v. Laidlaw Env't Servs., Inc.*,
528 U.S. 167 (2000)......................................................................10

*Havens Realty Corp. v. Coleman*,
455 U.S. 363 (1982)........................................................................3

*Immigrant Defs. L. Ctr. v. Noem*,
145 F.4th 972 (9th Cir. 2025) .........................................................5

*Kedra v. Schroeter*,
876 F.3d 424 (3d Cir. 2017)..........................................................12

*McNair v. Synapse Grp. Inc.*,
672 F.3d 213 (3d Cir. 2012)..........................................................11

*Melendres v. Arpaio*,
695 F.3d 990 (9th Cir. 2012) .....................................................9, 10

*Republican Nat'l Comm. v. N.C. Bd. of Elections*,
120 F.4th 390 (4th Cir. 2025) .........................................................6

*Shaw v. Smith*,
2026 WL 234875 (10th Cir. Jan. 29, 2026) ..................................8, 9

*Summers v. Earth Island Inst.*,
555 U.S. 488 (2009).....................................................................13

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014)................................................................................9
*Swanson v. State*,
    2025 WL 3628323 (Del. Dec. 15, 2025) ............................................12
*United States v. Brown*,
    448 F.3d 239 (3d Cir. 2006)..................................................................8
*United States v. Texas*,
    144 F.4th 632 (5th Cir. 2025) ...............................................................7
*Watley v. Pennsylvania*,
    2022 WL 9721966 (3d Cir. Oct. 17, 2022)..........................................11

## **INTRODUCTION**

Plaintiffs alleged that the WPD has a pervasive pattern and practice of violating the Fourth Amendment, that the NAACP-DE has both organizational and associational standing, and that the individual plaintiffs have standing for equitable relief. These arguments are fully supported by Supreme Court and Third Circuit precedent and by persuasive rulings of other federal courts. Defendants fail to show how Plaintiffs' plausible allegations are insufficient to establish standing at the pleadings stage of the case. This Court should reverse and remand for further proceedings.

## ARGUMENT

### I.    The NAACP-DE has Organizational Standing

A. Alliance *does not Impair the NAACP-DE's Organizational Standing*

The defendants argue that the Supreme Court's ruling in *F.D.A. v. Alliance for Hippocratic Med.,* 602 U.S. 367 (2024) (hereinafter "*Alliance*") impairs, if not overrules, the cases that support Plaintiff's claim for organizational standing. Ans. Br. 26-33. On the contrary, *Alliance* is a limited ruling, rejecting standing where the plaintiffs had no more than an ideological disagreement with the governmental policy regarding the distribution of the abortion pill Mifepristone/Mifeprex.

The plaintiffs in *Alliance* were four pro-life medical associations and individual doctors who challenged the lawfulness of the FDA's 2019 approval of generic mifepristone, and the FDA's 2016 and 2021 modifications of that drug's conditions of use. *Alliance*, 602 U.S. at 376. Because injury in fact requires more than a disagreement between governmental policy and the values of an "issue-advocacy" organization, the plaintiffs lacked standing. *Id.* at 386. The plaintiffs were merely "unregulated parties who seek to challenge [the] FDA's regulation *of others*." *Id*. at 385 (emphasis in original). The *Alliance* plaintiffs did not prescribe or use mifepristone, and the FDA did not require them to do or refrain from doing anything regarding that drug. *Id.* As a result, they suffered no monetary, physical, or property injuries from FDA policies. *Id.*

2

Moreover, there was no showing of actionable "conscience injuries" as the plaintiffs were not required to perform abortions or otherwise treat pregnant women under federal law, which provided comprehensive protections from any adverse action by hospitals and other providers. *Id*. at 387-389. Relatedly, and significantly with respect to the standing issue here, the claim that plaintiffs would have to divert resources and time from other patients to treat women with mifepristone complications was entirely speculative, and there was no evidence of any higher insurance costs due to any treatment of patients. *Id*. at 390-91. In sum, no plaintiff had standing "simply because *others* are allowed to engage in certain activities," of which plaintiffs object on policy or moral grounds. *Id.* at 393 (emphasis in original).

Accordingly, while proof of the "intensity of the litigant's interest," or "strong opposition" to a governmental program does not establish standing, *id.* at 394, evidence of increased costs for new or expanded programs and the diversion of organizational time and resources does provide a basis for organizational standing. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982) (plaintiff's housing counseling service, which was a core business activity, was impaired); *Alliance*, 602 U.S. at 395 (affirming this holding from *Havens*). It is this doctrinal line that distinguishes the NAACP-DE's claim of organizational standing from that of the *Alliance* plaintiffs. As alleged in the Amended Complaint,

3

NAACP-DE has historically engaged in (1) community education and rallies to promote public awareness of WPD's racially discriminatory and otherwise unconstitutional practices of detentions, arrests, and searches without justification, and (2) petitioning governmental officials to address these practices and to ensure accountability for constitutional violations to protect Black residents of Wilmington from unlawful police practices. J.A. 31; A.C. ¶ 12. In response to the WPD's pattern and practice of racially discriminatory detentions and searches, NAACP-DE has expanded the programs that advance these core organizational policies and, at the same time, has initiated new efforts, including an expanded Smart Justice program, and broader outreach to community members to secure their time and efforts to seek meaningful accountability in the local criminal legal system.

> B. *Appellate Court Cases Construing* Alliance *Support NAACP-DE's Organizational Standing Claim*

Rulings by federal circuit courts post-*Alliance* endorse the same view of organizational standing claimed by NAACP-DE in this case. These cases are fully aligned with *Alliance* and are instructive here. In these cases, organizations, who were engaged in efforts on behalf of persons directly impacted by unconstitutional governmental practices, expanded and supplemented their programs and were found to have standing to challenge the responsible governmental agencies and officials.

In *Immigrant Defs. L. Ctr. v. Noem*, 145 F.4th 972 (9th Cir. 2025), the court, applying the test set forth in *Alliance,* found organizational standing for an advocacy association that challenged the federal government's "Remain in Mexico" immigration policy. The court recognized that organizational standing could not be established if the plaintiff was simply objecting to the government's actions or was engaged in general advocacy on immigration issues. *Id.* at 987 (internal citations omitted). However, the record showed that the plaintiff organization had expanded its immigration efforts of providing "direct representation, counseling, and legal assistance to noncitizens in removal proceedings [and] adopted several initiatives . . . to limit the adverse impacts of [the new policy]." *Id*. at 988. This expansion included hiring of additional staff, increasing fundraising efforts and travel, and diversion of staff resources to this project, to "*continue* carrying out its core activities and longstanding mission." *Id*. (emphasis in original). The Court ruled that such actions were distinct from an organization that merely attempted to spend their way into standing. *Id.*

The same is true here. As detailed in the Amended Complaint, the NAACP-DE has re-structured its organizational efforts in response to the racially discriminatory and unlawful policing practices alleged. It has done so by expanding and supplementing its educational and counseling services of its members and of other Black residents of Wilmington, focusing on the OSS law

5

enforcement program that targets Black residents for detentions, interrogations, and searches without cause, and by seeking judicial, legislative and internal police department accountability for unconstitutional policing practices by the WPD.

The Fourth Circuit found organizational standing on similar grounds in *Republican Nat'l Comm. v. N.C. Bd. of Elections*, 120 F.4th 390 (4th Cir. 2025).[1] There, the plaintiffs challenged state election laws and regulations on the grounds that they violated federal law aimed at ensuring the integrity of the voting process by excluding persons not properly registered to vote. *Id.* at 399. The court recognized that the RNC's "core mission involves organizing lawful voters and encouraging them to support Republican candidates for office." *Id.* at 397. The state Republican branch alleged that these state election laws forced it to divert resources into combatting voter fraud in North Carolina. *Id.* Such conduct "frustrated their organizational and voter outreach efforts," and so provided organizational standing under *Alliance* and *Havens Realty. Id*. at 397. The court found that the harm to the plaintiff was traceable to the state election board's actions, and that it was redressable as the plaintiff would benefit directly from a favorable ruling that removed an obstacle to their efforts. *Id.* at 397-98; *see also,*

---

[1] Defendants dismiss *Republican Nat'l Comm.* as having "doubtful merit" because the parties all agreed that the plaintiffs had standing in that case. Ans. Br. 32. However, standing is a jurisdictional issue that the federal courts have an independent obligation to address. *Ala. Legislative Black Caucus v. Alabama*, 575 U.S. 254, 270 (2015).

*United States v. Texas*, 144 F.4th 632, 648 (5th Cir. 2025) (rehearing *en banc* granted (Aug. 29, 2025)) (an organization has standing where unconstitutional actions interfere with the organization's counseling and referral services).

Defendants seek to discredit these decisions by framing them as "out-of-circuit decisions, far removed from the criminal justice context of this case, that also read [*Alliance*] incorrectly." Ans. Br. 31. But they are persuasive authority that correctly draw the boundaries for organizational standing depending on the factual context of the case, in particular with respect to organizations that attempt to spend their way into standing versus those whose long-standing core activities have been disrupted by government action.

## II.   The Individual Plaintiffs Have Standing

Defendants argue that the standards set forth in *Lyons* for individual standing have not been met, but they fail to recognize the significant differences between *Lyons* and this case. In *Lyons*, there was only a single plaintiff who had been legally stopped for a violation of the motor vehicle code and was allegedly subjected to excessive force by the defendant officers. *City of Los Angeles v. Lyons*, 461 U.S. 95, 97-98 (1983). On a motion for a preliminary injunction, the Supreme Court held that the plaintiff had not shown a "real and immediate threat that he would again be stopped for a traffic violation or for any other offense, by an officer or officers who would illegally choke him." *Id.* at 105. By distinct contrast,

Plaintiffs have plausibly alleged a pattern and practice of pedestrian and vehicle stops of persons who had not committed any illegal act, and such stops were motivated in large part by racial bias.[2]

As the Supreme Court has recognized, while "[i]solated incidents of police misconduct under valid statutes would not [establish standing for equitable relief] . . . . [w]here [] there is a persistent pattern of police misconduct, injunctive relief is appropriate." *Allee v. Medrano*, 416 US. 802, 815 (1974). In *Shaw v. Smith*, 2026 WL 234875 (10th Cir. Jan. 29, 2026), the court ruled that individual motorists who had been subjected to stops and searches without constitutional justification had standing for injunctive relief because the Kansas Highway Patrol ("KHP") had a pattern and practice of unlawful stops and searches on a major interstate highway. In distinguishing *Lyons*, the court noted that the plaintiffs had proven that the KHP targeted "a discrete group" of out-of-state drivers for unlawful stops and searches at disproportionate rates, thus creating a substantial risk that even those who fully complied with traffic laws would be subjected to impermissible stops in the future. *Id.* at *9; *see also Susan B. Anthony List v.*

---

[2] Defendants' argument that Plaintiffs engaged in conduct justifying their stops is off the mark. For example, Plaintiff Rowe, whom the WPD claims ran a stop sign, made a contemporaneous denial of that allegation. Op. Br. 20. Nor can Defendants argue that Plaintiffs Rowe and N. Green were legally stopped because they "resembled" criminal suspects. An officer who only knows the general physical characteristics of a suspect does not possess enough details to conduct a stop of a person. *See United States v. Brown*, 448 F.3d 239, 247-48 (3d Cir. 2006).

8

*Driehaus*, 573 U.S. 149, 158 (2014) ("An allegation of future injury may suffice if . . . there is a substantial risk that the harm will occur.") (internal citation omitted).

As the court stated:

"[E]ven a diligent, good faith attempt to follow the law cannot guarantee that a driver will not be stopped by law enforcement. Traffic infractions are incredibly common and may be caused by any number of mere mistakes . . . . And significantly, any of the plaintiffs could also be riding as a passenger in a car in the future, meaning they would have no control over whether traffic laws are violated. Rather than being mere speculation, there is a substantial risk that Plaintiffs – no matter how carefully they try to follow traffic laws – will be pulled over by [Kansas Highway Patrol] at some point again . . . . Given the frequency of traffic stops and the data showing the disproportionate targeting of out-of-state drivers, [a minority group,] there is a substantial risk that Plaintiffs will be stopped by KHP again in the future."

*Shaw*, 2026 WL 234875 at *8 (internal citations omitted).

The same is true with respect to the WPD practices at issue in this case. The Amended Complaint alleges the targeting of a discrete group - Black pedestrians and motorists - in violation of the Fourth and Fourteenth Amendments. Indeed, Plaintiffs in this case make a strong showing based on repeated prior illegal detentions, searches and arrests, and targeting in the form of racial profiling. At the pleadings stage, such allegations are sufficient to confer standing.

Likewise, in *Melendres v. Arpaio*, 695 F.3d 990 (9th Cir. 2012) the court found that individual plaintiffs had standing when their prior injuries were caused

by a pattern of unconstitutional race-based stops, which reflected official authorization. *Id.* at 998. The court further held that repeated violations of the rights of persons who have not been engaged in criminal conduct provide even stronger grounds for equitable relief. *Id*.

Defendants seek to distinguish *Melendres* on the ground that there was proof of a departmental policy in that case, but the defendant agency in *Melendres* did not have a written policy that violated the Fourth Amendment. *Id.* Rather, the court's ruling was based on a full record on a motion for summary judgment that showed a pattern of illegal conduct that was sufficient to prove an authorized practice. *Id.* Here, at the pleadings stage, the factual allegations plausibly show a policy and practice of unconstitutional detentions and searches. No more is needed at this stage of the litigation to establish standing. *See Friends of the Earth v. Laidlaw Env't Servs., Inc.*, 528 U.S. 167, 184 (2000) (pervasive pattern of violations sufficient to establish standing); *DeShawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 344-45 (2d Cir. 1998) (pattern of targeting juveniles for stops and interrogations at family court sufficient to establish standing); *Com. of Pennsylvania. v. Porter*, 659 F.2d 306, 320 (3d Cir. 1981) ("The injunction was issued not because of the events in isolation . . . but because, as evidenced in part by those events, a pattern or practice of violations occurred over a long period of

10

time which extended well within the period of the statute of limitations, and was likely to continue in the future.").

The cases relied upon by Defendants are not to the contrary. In *McNair v. Synapse Grp. Inc.*, 672 F.3d 213 (3d Cir. 2012), this Court held that *former* subscribers of a magazine did not have standing to seek equitable relief against allegedly deceptive marketing tactics because, as current non-subscribers, they were not subject to the alleged harm. *Id.* at 224-25. By contrast, here, there is no action that Plaintiffs have taken or can take that will "unsubscribe" them and prevent them from being stopped and/or searched again in the future. In *Watley v. Pennsylvania*, 2022 WL 9721966 (3d Cir. Oct. 17, 2022), injunctive relief was denied to a Connecticut-based plaintiff who alleged that he was subjected to a single traffic stop and then arrested for a night, as there was at most an unlikely chain of events that the plaintiff would travel back to Pennsylvania, receive a ticket for a traffic violation, and then be arrested for that violation again. *Id.* at *3. While that claim was highly speculative, the allegations here show a likely pattern of future violations.

The other arguments made by Defendants are similarly without merit. Defendants do not dispute the assertion that the WPD had a policy and practice of submitting false information in affidavits for search and arrest warrants; rather, they submit that it would be "difficult to imagine" why WPD would continue to

11

engage in unconstitutional practices after being admonished by the courts. Ans. Br. 18-19. Putting aside the significance of this concession of past serious official misconduct, there is additional evidence that WPD officers have continued to engage in similar misconduct even after being reprimanded by the courts in 2022.[3] In *Swanson v. State*, 2025 WL 3628323 (Del. Dec. 15, 2025), the Supreme Court of Delaware, in reviewing a motion to suppress, recognized that a WPD detective asserted in an affidavit of probable cause that an Instagram video showed a firearm in the defendant's possession, even though the trial court's independent analysis could not make out any "firearm (or any part of a firearm)." *Id.*, at *8. This demonstrates that, despite prior admonishment, the WPD is continuing to make probable cause determinations based on flimsy Instagram "evidence."

Finally, Defendants argue, without case support, that Plaintiffs' failure to further amend the Amended Complaint over the past two years is somehow proof that the illegal detentions, searches, and arrests alleged have not continued. But Plaintiffs had already amended the Complaint, and further amendments, while the

---

[3] Defendants' argue that these allegations are irrelevant to this case because they are not directly tied to any of the individual Plaintiffs. Ans. Br. 18. This argument ignores that the appropriate standard on a motion to dismiss is to review "whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Kedra v. Schroeter*, 876 F.3d 424, 441 (3d Cir. 2017) (emphasis in original) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-23 (2007)).

court was considering the motion to dismiss, would only lead to an endless cycle of Rule 12 proceedings.

### III. *Summers* Does Not Provide Grounds to Deny NAACP-DE's Associational Standing, as Demonstrated by *Alabama Legislative Black Caucus*

The NAACP-DE has sufficiently alleged that its members have suffered from the alleged constitutional injuries. The ruling in *Summers v. Earth Island Inst.,* 555 U.S. 488 (2009) is not to the contrary. In *Summers*, the Supreme Court held that, to satisfy associational standing, the association must identify its members who have standing to seek relief. *Id.* at 499. But that ruling was after a bench trial. *Id.* at 492. *Summers* did not require the association to disclose its members' identities at the pleadings stage to satisfy associational standing.

Likewise, in *Alabama Legislative Black Caucus*, the Supreme Court's review of the association's standing was done on a full trial record, and in that procedural setting, the Court remanded the case for consideration of the organization's membership list. 575 U.S. at 271. Significantly as well, on the standard for associational standing, the Supreme Court stated that "it seems highly likely that a 'statewide' organization with members in 'almost every county,' the purpose of which is to help 'blacks and other minorities and poor people [vote],' will have members in each majority-minority district." *Id.* at 270. That is precisely the nature of the allegations made at the pleadings stage with respect to a similar

13

statewide membership organization whose purpose is to secure non-discriminatory

law enforcement for Black residents in Delaware's most populous and majority-

Black city.

## **CONCLUSION**

The NAACP-DE has alleged an injury to itself and to its members sufficient to secure equitable relief. Likewise, the individual Plaintiffs have adequately shown that they face an imminent threat of further unconstitutional conduct by the WPD, which satisfies their burden to plead standing for equitable relief. Therefore, Plaintiffs request that this Court reverse the District Court's decision and remand this case for further proceedings.

| | |
|---|---|
| */s/ Dwayne J. Bensing* | */s/ David Rudovsky* |
| Dwayne J. Bensing (DE #6754) | David Rudovsky (PA #15168) |
| dbensing@aclu-de.org | KAIRYS RUDOVSKY |
| */s/ Jared Silberglied* | MESSING FEINBERG & LIN, |
| Jared Silberglied (PA #336118) | LLP |
| jsilberglied@aclu-de.org | The Cast Iron Building |
| | 718 Arch St. Suite 501 South |
| ACLU of Delaware | Philadelphia, PA 19106 |
| 100 W. 10th St. #706 | drudovsky@krlawphila.com |
| Wilmington, DE 19801 | (215) 925-4400 |
| (302) 295-2113 | |

*Attorneys for Appellant*

Dated: February 11, 2026

15

## **<u>CERTIFICATION OF ADMISSION TO THE BAR</u>**

I, Jared Silberglied, certify as follows:

1. I am a member in good standing of the bar of the United States Court of
   Appeals for Third Circuit.

2. Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that the
   foregoing is true and correct.

Dated: February 11, 2026

*/s/ Jared Silberglied*
Jared Silberglied

**<u>CERTIFICATE OF COMPLIANCE</u>**

I certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(ii). This brief contains 3,128 words, excluding the parts of the brief exempted by Rule 32(f) of the Federal Rules of Appellate Procedure.

This brief complies with the typeface requirements of Rule 32(a)(5) of the Federal Rules of Appellate Procedure and the type style requirements of Rule 32(a)(6) of the Federal Rules of Appellate Procedure because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Mac Version 16.105.3 in 14-point Times New Roman font.

This brief complies with the electronic filing requirements of Local Rule 31.1(c) because the text of this electronic brief is identical to the text of the paper copies, and the Cortex XDR Agent Version 9.0.0 virus detection software has been run on the file containing the electronic version of this brief and no viruses have been detected.

Dated: February 11, 2026

/s/ Jared Silberglied
Jared Silberglied

## **CERTIFICATE OF FILING AND SERVICE**

I, Jared Silberglied, Esquire, hereby certify that on the 11th day of February 2026, a true and correct copy of Appellant's Reply Brief was served upon all counsel of record via CM/ECF.

*/s/ Jared Silberglied*
Jared Silberglied